UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Weston J. Stow

     v.                        Civil No. 17-cv-088-LM

Robert P. McGrath et al.[1]


## REPORT AND RECOMMENDATION

Seeking declaratory, injunctive, and monetary relief, and invoking 42 U.S.C. §§ 1983, 1985(1) & 1986, 18 U.S.C. § 242, 28 U.S.C. § 1367, and N.H. Rev. Stat. Ann. ("RSA") § 491:22, plaintiff Weston J. Stow has filed a complaint (Doc. No. 1) and an amended complaint (Doc. Nos. 28, 29, 30). The court deems

---

[1]Stow has named the following defendants: N.H. State Prison ("NHSP") Unit Manager Robert P. McGrath, N.H. Department of Corrections ("DOC") Commissioner William Wrenn; DOC Security and Training Director Christopher Kench; NHSP Sgt. Edward Hardy; NHSP Sgt. Randy Inman; NHSP Lt. Leo J. Lirette; Assistant N.H. Attorney General Lynmarie C. Cusack; N.H. State Police ("State Police") Detective Sloper, whose first name is unknown ("FNU"); former NHSP Investigations Chief M. Marchand; NHSP Investigations Chief FNU Dinsmoore; N.H. Governor Chris Sununu; Northern N.H. Correctional Facility Law Librarian Angela Poulin; DOC employee John Perkins; NHSP Warden Michael Zenk; DOC employee Dr. Anne Davis; N.H. Department of Safety Commissioner John J. Barthelmes; State Police Director Col. Robert Quinn; State Police Troop D Commander Lt. Gregory Ferry; Merrimack County Sheriff Scott E. Hilliard; former Concord Police Department ("CPD") Chief John F. Duval, CPD Chief Bradley C. Osgood; the DOC Adult Parole Board; and DOC Sexual Offender Treatment Program Director Kim Marsh. This Report and Recommendation recommends that all defendants be dismissed from this case except for McGrath, Lirette, Hardy, and Perkins.

the amended complaint (Doc. Nos. 28, 29, 30) to be the operative complaint in this matter and subjects it to preliminary review, pursuant to 28 U.S.C. § 1915A(a) and LR 4.3(d)(1), taking the assertions in Document Nos. 1, 5-8, 10-13, 15-26, 28-38, 41, 42, 46, 47, 49, 52-55, and 57-60, to be addenda to the amended complaint for purposes of preliminary review.

Also before the court for consideration are Stow's "Motion for Certification for Constitutional Challenge of State Statutes" (Doc. No. 25), "Motion Presenting Clarification of Any Required Exhaustion of Remedies" (Doc. No. 35), "Motion for Declaratory Judgment Pursuant to 28 USC 2201, Fed. R. Civ. P. 57" (Doc. No. 38), "Motion Regarding Supplemental Jurisdiction Specifics" (Doc. No. 42), "Motion to Remove Sr. Assistant Atty. Gen. Lynmarie C. Cusack as Named Defendant from Case" (Doc. No. 52), and "Motion Request to Submit a Memorandum of Law" (Doc. No. 53).  These motions are addressed in this Report and Recommendation ("R&R").

## Background

### I.   Transfer from NHSP to NCF

In early 2016, Stow was incarcerated in the Special Housing Unit ("SHU") at the New Hampshire State Prison ("NHSP").  While Stow was housed in SHU, he was taking daily prescription heart medication.  In February 2016, Stow's heart medication ran out

2

and was not timely refilled, as no SHU officer picked up the prescription from the NHSP pharmacy for the weekend.  Stow complained about the failure to timely refill his prescription through the New Hampshire Department of Corrections ("DOC") administrative grievance process.

After Stow had filed several Inmate Request Slips ("IRSs"), Stow was called into an office in SHU, where Sgt. Randy Inman and another officer had Stow's IRSs.  Inman asked Stow if he thought that by writing the IRSs that he would get Inman in trouble.  The officers advised Stow to come to the unit officers with any medication concerns in the future, and asked Stow if he still wanted his IRSs processed.  Stow said that he did want the IRSs processed.  After his conversation with Inman, Stow was under the impression that the SHU Unit Manager, Robert McGrath, was agitated and offended by Stow's filing of the IRSs.

As a result of Stow's administrative complaints, NHSP Maj. Fouts looked into the medication refill issue, and instituted procedures to insure that no further lapse in necessary daily medications would occur at SHU.  Shortly after Stow filed his complaints about the prescriptions, McGrath told Stow: "You made a big mistake, if I get a clean shot at you I'm going to take it."  Stow believes that McGrath made that statement because, Stow presumes, McGrath had been subject to negative consequences for having allowed Stow's medications to lapse.

Stow alleges that McGrath, NHSP Lt. Leo Lirette, and NHSP Sgt. Edward Hardy caused Stow to be transferred to the Northern New Hampshire Correctional Facility ("NCF") on March 30, 2016 shortly after, and in retaliation for, those administrative complaints.  As a result of his transfer to NCF, Stow lost his kitchen job at the NHSP, at which he was making approximately ninety dollars per month.  At NCF, Stow was placed on "no job available" status, and was making only seventeen dollars per month until he got a job in the NCF kitchen, where he made between forty and sixty dollars per month.

Additionally, Stow states that the conditions of confinement at NCF were worse than those at the NHSP, as Stow was housed in a dayroom at NCF where the lights were on all night.  Additionally, at NCF, Stow had less privacy, quiet, fresh air, outdoor recreation, and library time than he did at the NHSP.  Stow claims that he suffered anxiety and emotional distress as a result of his transfer to NCF and the attendant worsening of his job, pay, and conditions of confinement.

At some point, McGrath told Stow that his prescription refill complaints had nothing to do with his transfer to NCF. McGrath told Stow that McGrath, Lirette, and Hardy had decided to move Stow to NCF, and gave Stow different reasons at different times for the move, including: Stow's administrative complaints concerning health risks Stow might suffer due to a

4

broken ventilation system in SHU; the safety and security
requirements of the institution; for no reason; and because two
of Stow's cellmates had asked to be moved out of Stow's cell on
SHU within a short period of time.  Lirette later told Stow that
he didn't know why Stow had been moved.  DOC Classifications
Administrator Kim Lacasse told Stow that he was moved because he
hadn't been at NCF in years, and it was time for a change.

Stow states that, once at NCF, he made multiple requests to
be returned to the NHSP.  In response to those requests, Lirette
told Stow that he would charge Stow with a disciplinary offense
for abusing the grievance process if Stow continued to request a
transfer back to the NHSP.  Stow asserts that Lirette also
failed to answer certain questions Stow had posed to Lirette in
the IRSs regarding his transfer requests.

In September 2016, Stow sent letters of complaint to New
Hampshire State Police ("State Police") liaison to the NHSP,
Det. Sloper, and sent an IRS to NHSP Investigations Unit Chief
M. Marchand, asking them to investigate the conduct of McGrath,
Lirette, and Hardy in relation to Stow's transfer and
administrative grievances, to make a determination as to whether
probable cause for criminal acts by those officers could be
established.  Marchand was later replaced by Investigations Unit
Chief Dinsmoore, who Stow asserts had constructive knowledge of
the IRS Stow had sent to Marchand.  Stow also sent the same

requests to other state, county, and local officials, including
Governor Chris Sununu, New Hampshire Department of Safety
Commissioner John J. Barthelmes, State Police Director Col.
Robert Quinn, State Police Troop D Commander Lt. Gregory Ferry,
Merrimack County Sheriff Scott E. Hilliard, former Concord
Police Department ("CPD") Chief John Duval, and CPD Chief
Bradley C. Osgood.  Stow asserts that none of these individuals
responded to Stow or determined whether there was probable cause
to believe that McGrath, Lirette, or Hardy committed any crime.

Stow states that McGrath, Lirette, and Hardy have failed to
comply with DOC policies as well as their oaths of office, and
that they must be fired.  Stow alleges that NHSP Warden Michael
Zenk refused to fire them, and that DOC Commissioner Wrenn, in
turn, refused to terminate those officers and Zenk.  Stow
contends that Zenk's and Wrenn's refusal to do so constituted a
violation of state law and Zenk's and Wrenn's oath of office.

## II.  **Law Library**

Stow alleges that in September 2016, after his transfer to
NCF, he filed a lawsuit in the New Hampshire Superior Court.
While that matter was pending, Stow claims that NCF law
librarian Angela Poulin erroneously refused Stow extended law
library hours for the month of April 2017, although extended
hours are generally afforded to prisoners with open court cases,
as Poulin believed that Stow's Superior Court case had been

dismissed.  Stow claims that Poulin failed to follow prison policy that required her to verify Stow's assertion that he had an active case in the state courts.  Stow's extended law library time was reinstated in May 2017.

Stow filed a complaint with NCF Programs Director Sue Young about Poulin denying him extended law library time in April 2017.  Another NCF employee, Dr. Anne Davis, referred Stow's complaint to John Perkins, Poulin's supervisor.  Stow complains that both Poulin and Davis failed to answer questions Stow had posed to them in IRSs.

After receiving Stow's IRSs, Perkins ordered Stow not to file further complaints concerning his extended law library time, and that if Stow continued to file administrative complaints on that issue, Perkins would charge Stow with a disciplinary infraction for violating a direct order.  Stow asserts that a disciplinary violation would render him ineligible for a once-a-year earned privilege that allows prisoners to purchase various personal and food items at a reduced price.

Stow states that Perkins and Poulin have failed to comply with DOC policies as well as their oaths of office, and that they were thus subject to mandatory termination.  Wrenn has refused Stow's request that Wrenn terminate Perkins and Poulin. Stow contends that Wrenn's refusal to do so constitutes a

violation of state law and Wrenn's oath of office.

## III. __Earned Time Credit__

Stow alleges that, since he has been incarcerated at the DOC, he has received two Associates Degrees from Ashworth University, which he states is fully accredited by the Distance and Education Training Council ("DETC"), an accrediting agency recognized by the United States Department of Education.  Stow alleges that DOC Policy and Procedure Directive ("PPD") 5.11, an administrative policy that provides inmates who earn Associates Degrees during their incarceration with earned time credit against their sentence, allows such credit in the event an inmate earns an Associates Degree from an institution accredited by an exclusive list of accrediting agencies.  That list does not include the DETC.  Accordingly, Stow claims that PPD 5.11, by its terms, does not allow him to obtain earned time credit for his Associates Degrees.

Stow states that on June 6, 2017, he asked DOC Assistant Commissioner Helen Hanks to recognize the accreditation of his college and thus approve him for earned time credit for his Associates Degrees.  Hanks advised Stow that she had asked Stow's case manager to provide her with copies of Stow's degrees so that she can make a decision on his request.

## IV. __Sexual Offender Treatment Program__

Kim Marsh, the DOC Sexual Offender Treatment Program

("SOTP") Director, denied Stow's request for admittance to the SOTP, stating that Stow will not be considered for the program until he is serving his last consecutive sentence.  Stow states that other inmates have been admitted to the SOTP before they served their last consecutive sentence.  Stow claims that the fact that he has not yet completed the SOTP may inhibit his ability to obtain meaningful state court review of any motion to suspend sentence that he may file in the Superior Court.

**V.    Consecutive Sentences**

    A.    Original Sentence

Stow was sentenced in the state Superior Court, in 1991, to five consecutive 7½–15 year prison terms, and other shorter consecutive sentences, for an aggregated sentence of 41-82 years, which he began to serve in 2003, after he completed a prison sentence in Massachusetts.  Stow asserts that, pursuant to the sentencing statutes under which he was sentenced, and/or that were in effect at the time of his criminal offenses, the Superior Court did not have the authority to impose consecutive sentences on him.

    B.    Parole

Stow asserts that the DOC Adult Parole Board ("APB"), on two occasions, in 2010 and 2014, granted him parole from the sentence he was then serving to his next consecutive sentence. Stow has not been granted parole to the community.  Stow claims

that under the sentencing laws and prison policies that existed at the time he was sentenced, the APB did not have the authority to parole him to a consecutive sentence, and thus erroneously failed to grant him parole to the community.

## **Claims**[2]

Stow has asserted the following claims in this action:

1.    Defendants McGrath, Lirette, and Hardy, acting individually and in conspiracy with one another, caused Stow to be transferred from the NHSP to NCF on March 30, 2016, in retaliation for Stow's administrative complaints about medication refill procedures and inadequate ventilation on his housing unit, causing Stow to lose his NHSP kitchen job, to have his pay decreased, and subjecting Stow to adverse conditions of confinement, embarrassment, and a loss of dignity, when other inmates who had made similar administrative complaints were not transferred to NCF and did not lose their prison jobs, in violation of:

   a.    Stow's First Amendment rights to free speech and to petition the government for a redress of grievances, rendering those defendants liable for damages and injunctive relief under 42 U.S.C. § 1983;

   b.    Stow's Fourteenth Amendment rights to:

      i.    due process, and
      ii.   equal protection;

   c.    Stow's rights to pursue and obtain happiness, enjoy life, and possess property, guaranteed by Pt. 1, Art. 2 of the New Hampshire Constitution;

---

[2]Stow asserts all of his federal due process and equal protection claims under both the Fifth and Fourteenth Amendments.  As the defendants in this case are state actors and the laws at issue are state laws, his claims arise only under the Fourteenth Amendment.  Accordingly, the court has construed the equal protection and due process claims as arising under the Fourteenth Amendment.  To the extent Stow seeks to invoke the Fifth Amendment, his claims in that regard should be dismissed.

    d.   state common law, rendering defendants liable for damages for:

        i.   conspiracy,
        ii.  malicious abuse of process,
        iii. malfeasance in public office,
        iv.  misfeasance in public office,
        v.   negligence, and
        vi.  tortious interference with contractual relations;

    e.   state and federal criminal law; and

    f.   prison policy.

2.  Defendant McGrath threatened Stow with bodily harm by stating "You've made a big mistake, if I get a clean shot at you I'm going to take it," in retaliation for Stow's administrative complaints about medication refill procedures and inadequate ventilation on his housing unit, in violation of:

    a.   Stow's First Amendment rights to free speech and to petition the government for a redress of grievances, rendering defendant liable for damages and injunctive relief under 42 U.S.C. § 1983;

    b.   Stow's Fourteenth Amendment rights to:

        i.   due process, and
        ii.  equal protection;

    c.   state common law, rendering defendant liable for damages for:

        i.   malicious abuse of process,
        ii.  malfeasance in public office, and
        iii. misfeasance in public office;

    d.   state and federal criminal law; and

    e.   prison policy.

3.  Defendants McGrath, Lirette, Perkins, and Poulin, made false statements, orally and/or in writing, to Stow and others, concerning the reasons Stow was moved to NCF, the circumstances surrounding denying Stow extended law library

time, and McGrath's prior involvement in civil lawsuits, in
violation of:

    a.   Stow's First Amendment rights to free speech and
    to petition the government for a redress of
    grievances;

    b.   Stow's Fourteenth Amendment rights to:

        i.   due process, and
        ii.  equal protection;

    c.   state common law, rendering defendants liable
    for:

        i.   malicious abuse of process,
        ii.  malfeasance in public office,
        iii. misfeasance in public office,
        iv.  negligence,
        v.   deceit,
        vi.  intentional misrepresentation,
        vii. slander, and
        viii. obstruction of justice;

    d.   state and federal criminal law; and

    e.   prison policy.

4.    Defendants McGrath, Inman, Lirette, Perkins, Poulin,
and Davis failed to answer some of Stow's IRSs in
compliance with the deadlines set forth by prison policy,
failed to answer some of Stow's IRSs at all, failed to
answer questions Stow had posed within IRSs, or provided
inappropriate or nonresponsive statements in response to
Stow's IRSs, in violation of:

    a.   Stow's First Amendment rights to free speech and
    to petition the government for a redress of
    grievances;

    b.   Stow's Fourteenth Amendment rights to:
        i.   due process, and
        ii.  equal protection;

    c.   state common law, rendering defendants liable
    for:

        i.   malfeasance in public office,

   ii. misfeasance in public office,
   iii. negligence,
   iv. deceit, and
   v. intentional misprepresentation;

 d. state and federal criminal law; and

 e. prison policy.

5. Defendants Lirette and Perkins improperly denied Stow access to the administrative grievance system by ordering Stow not to make administrative requests or complaints concerning Stow's transfer to NCF and the April 2017 denial of extended law library time, and threatened to take disciplinary action against Stow if he did so, in retaliation for filing administrative grievances, in violation of:

 a. Stow's First Amendment rights to free speech and to petition the government for a redress of grievances, rendering defendants liable for damages and injunctive relief under 42 U.S.C. § 1983;

 b. Stow's Fourteenth Amendment rights to:

   i. due process, and
   ii. equal protection;

 c. state common law, rendering defendants liable for damages for:

   i. malfeasance in public office,
   ii. misfeasance in public office, and
   iii. negligence;

 d. state and federal criminal law; and

 e. prison policy;

6. After Stow wrote to defendants Zenk, Marchand, Sloper, Barthelmes, Quinn, Ferry, Hilliard, Duval, Osgood, and Dinsmoore, asking them to make a probable cause determination that McGrath had committed state law crimes of perjury, official oppression, conspiracy, harassment, criminal mischief, and malicious mischief, and if so, to refer those matters to the appropriate prosecuting authority, none of those defendants responded to Stow, in violation of:

    a.   Stow's Fourteenth Amendment rights to:

        i.  due process, and
        ii. equal protection;

    b.   state common law, rendering defendants liable for:

        i.   malfeasance in public office,
        ii.  misfeasance in public office,
        iii. negligence, and
        iv.  malicious mischief;

    c.   state and federal criminal law; and

    d.   prison policy;

7.  Defendant Poulin denied Stow extended law library hours in April 2017, in violation of:

    a.   Stow's First and Fourteenth Amendment right to meaningfully access the courts;

    b.   Stow's Fourteenth Amendment rights to:

        i.  due process, and
        ii. equal protection;

    c.   state common law, rendering defendant liable for:

        i.   malfeasance in public office,
        ii.  misfeasance in public office,
        iii. negligence, and
        iv.  intentional misrepresentation;

    d.   state and federal criminal law; and

    e.   prison policy.

8.  Defendant Zenk failed to terminate McGrath, after Stow advised Zenk that McGrath had made a false written statement in violation of McGrath's oath of office; Defendant Wrenn failed to terminate McGrath, Zenk, Perkins, and Poulin, after Stow advised Wrenn that those defendants had violated their oaths of office; and Gov. Sununu failed to terminate Wrenn, McGrath, Zenk, Perkins, and Poulin, after Stow advised Sununu that those defendants had

violated their oaths of office; in violation of:

    a.   Stow's Fourteenth Amendment rights to:

        i.  due process, and
        ii. equal protection;

    b.   RSA § 92:2;

    c.   Pt. 2, Art. 84 of the New Hampshire Constitution;

    d.   state common law, rendering defendant liable for:

        i.   malfeasance in public office,
        ii.  misfeasance in public office,
        iii. negligence, and
        iv.  intentional misrepresentation;

    e.   state and federal criminal law; and

    f.   prison policy.

9.   The following state law statutes are unconstitutional, for reasons stated below:

    a.   RSA §§ 99-D:1, 99-D:2, 99-D:3, 99-4, and 99-D:7, concerning the indemnification of state employees, violate the Due Process Clause of the Fourteenth Amendment.

    b.   RSA § 100-A:5, concerning state employees' service retirement benefits, violates Part 1, Art. 38 of the New Hampshire Constitution and the due process and equal protection provisions of the Fourteenth Amendment, to the extent that statute does not require the forfeiture of benefits when a state employee is convicted of a crime while on the job.

10.  PPD 5.11 violates the Fourteenth Amendment, as follows:

    a.   on its face, as it grants earned time credit only to inmate recipients of Associates Degrees from colleges accredited by certain institutions, and thus treats differently inmate recipients of Associates Degrees from colleges accredited by institutions not listed in PPD 5.11, who may not receive earned time credit under the policy; and

      b.    as applied to Stow, as the DOC may deny Stow earned time credit because his Associates Degrees were earned at a college not accredited by an institution listed in PPD 5.11.

11.  Kim Marsh denied Stow admission to the prison's SOTP on the basis that PPD 6.35 prevented his admission to the SOTP until he was serving his last consecutive sentence, when other inmates have been placed into that program before their last consecutive sentence, in violation of:

      a.    Stow's Fourteenth Amendment rights to:

          i.   due process, and
          ii.  equal protection;

      b.    Stow's right to meaningful review of a motion to suspend sentence filed pursuant to RSA § 651:20;

      c.    the ex post facto clauses of Part 1, Article 37 of the New Hampshire Constitution and Article 1, Section 10 of the United States Constitution.

      d.    Stow's right under state common law not to have his sentences aggregated in the manner set forth in PPD 6.35.

12.  The APB paroled Stow to his consecutive sentence, and not to the community, in violation of:

      a.    Stow's Fourteenth Amendment rights to:

          i.   due process, and
          ii.  equal protection;

      b.    RSA §§ 651-A:6, I; 651-A:6, II; and 651:20, as those statutes existed at the time of Stow's sentencing and underlying offense; and

      c.    Part 1, Article 2 of the New Hampshire Constitution.

13.  Stow's sentence is invalid as the sentencing court did not have the authority to impose consecutive sentences under the sentencing law in effect at the time of his sentencing or underlying offenses.

<u>**Preliminary Review**</u>

**I.   <u>Standard</u>**

The court conducts a preliminary review of prisoner complaints filed in forma pauperis.  <u>See</u> LR 4.3(d)(1).  The court may dismiss some or all of the claims in prisoner complaints if, among other things, the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted.  <u>See</u> 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); LR 4.3(d)(1)(A).  In conducting its preliminary review, the court construes pro se complaints liberally.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'" <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted).

**II.   <u>Claims Surviving Preliminary Review</u>**

The following claims may proceed:

- Claims 1(a), 1(d)(i), 1(d)(iii), 1(d)(iv), 1(d)(v), and 1(d)(vi) as to defendants McGrath, Lirette, and Hardy;

- Claims 2(a) and 2(c)(i), 2(c)(ii), and 2(c)(iii) as to defendant McGrath.

- Claims 5(a) and 5(c)(i), 5(c)(ii), and 5(c)(iii) as to defendants Lirette and Perkins.

In an Order issued simultaneously with this R&R, the court directs service upon defendants in their individual capacities with respect to those state common law claims and section 1983 claims for damages, and in their official capacities as to the claims for injunctive relief under 42 U.S.C. § 1983.

## III. Claims and Defendants to Be Dismissed

### A. Prison Job and Transfer

#### 1. Due Process – Claim 1(b)(i)

"'[U]nless state laws or regulations are to the contrary, prisoners have no vested property or liberty rights to either obtain or maintain prison jobs.'" Ventre v. Forgues, No. 11-40205-TSH, 2013 U.S. Dist. LEXIS 33216, at *9, 2013 WL 597643, at *4 (D. Mass. Jan. 16, 2013) (quoting Dupont v. Saunders, 800 F.2d 8, 10 (1st Cir. 1986)), R&R approved, 2013 U.S Dist. LEXIS 31874, at *1, 2013 WL 597643, at *1 (D. Mass. Feb. 14, 2013). New Hampshire law creates neither a property interest nor a liberty interest in employment for prisoners. See Graham v. Warden, No. 07-cv-247-PB, 2008 U.S. Dist. LEXIS 35897, at *17-18, 2008 WL 2699671, at *6 (D.N.H. Apr. 15, 2008), R&R approved, 2008 U.S. Dist. LEXIS 49854, at *1, 2008 WL 2699671, at *1 (D.N.H. June 30, 2008). Furthermore, the loss of a particular prison job or salary does not create an atypical and significant hardship upon which a liberty interest may be grounded. See id. (citing Sandin v. Conner, 515 U.S. 472, 483–84 (1995)).

Accordingly, Stow cannot assert a federal due process claim with respect to being denied employment or a particular wage while incarcerated due to his transfer, and Claim 1(b)(i) should be dismissed to the extent it asserts a due process violation.

### 2. __Equal Protection – Claim 1(b)(ii)__

"'The Equal Protection Clause contemplates that similarly situated persons are to receive substantially similar treatment from their government.'" Davis v. Coakley, 802 F.3d 128, 132 (1st Cir. 2015) (citation omitted).  To establish an equal protection claim, a plaintiff needs to allege facts showing that "'(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [the plaintiff].'" Id. at 132-33 (citations omitted).  "Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977).

Stow alleges that he was treated differently than other inmates when he was transferred to NCF, in violation of his Fourteenth Amendment right to equal protection of the laws. Stow does not allege any facts indicating that he was treated differently than other inmates on the basis of his affiliation

with any protected class.  Rather, he states only that other
inmates who filed complaints about medication refills and the
ventilation system were not transferred to NCF and did not lose
their jobs or pay.  The facts alleged as to the other inmates,
however, fail to show that they were similarly situated to Stow
in all relevant respects, as there are numerous factors that
might impact prison officials' decisions concerning whether and
where to transfer or employ inmates.  Accordingly, Stow has
failed to state an equal protection claim based on his transfer
to NCF, and the district judge should dismiss Claim 1(b)(ii) to
the extent it asserts an equal protection violation.

    B.    <u>Threatening Statements – Claims 2(b), 5(b)</u>

Stow alleges that McGrath, by threatening Stow with bodily
harm, knowing that Stow is a sixty-three year old man with a
heart condition, violated Stow's equal protection and
substantive due process rights.  Stow further alleges that
Perkins and Lirette violated Stow's Fourteenth Amendment
procedural and substantive due process rights by threatening
Stow with disciplinary action.

Allegations of verbal threats and harassment are
insufficient to assert a Fourteenth Amendment violation.  <u>See</u>
<u>Shabazz v. Cole</u>, 69 F. Supp. 2d 177, 200-01 (D. Mass. 1999)
(without more, threats and verbal abuse by corrections officers
do not violate inmate's constitutional rights).  Accordingly,

20

Stow has failed to state claims based on McGrath's, Lirette's, and Perkins's threats, and the district judge should dismiss Claims 2(b) and 5(b), including subparts.

   C.   Extended Law Library Time

      1.   **Due Process – Claim 7(b)(i)**

      Stow alleges that his Fourteenth Amendment rights to procedural and substantive due process were violated when Poulin improperly denied him extended hours in the law library in April 2017.  Inmates have no constitutional right to a particular number of hours in the law library.  See Bounds v. Smith, 430 U.S. 817, 828 (1977), overruled on other grounds, Lewis v. Casey, 518 U.S. 343 (1996).  Further, in the prison context, due process violations generally lie only for deprivations which "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.  Because Stow did not have a liberty or property interest in extended hours, and the temporary denial of extended hours in the prison law library is not a significant hardship of the sort that would violate a prisoner's due process rights, Stow has failed to state any claim for a due process violation upon which relief might be granted.  Accordingly, the district judge should dismiss Claim 7(b)(i).

      2.   **Equal Protection – Claim 7(b)(ii)**

      Stow has failed to assert facts to demonstrate that he was

treated differently than any other inmate who was similarly situated to Stow in all relevant respects, in the denial of law library time, or that the denial of extended law library hours was based on any impermissible consideration or discriminatory animus.   See Davis, 802 F.3d at 132-33; Arlington Heights, 429 U.S. at 265.   Accordingly, Stow has failed to state an equal protection claim upon which relief might be granted concerning the denial of law library time, and the district judge should dismiss Claim 7(b)(ii).

### 3.   Access to the Courts – Claim 7(a)

Stow alleges that Poulin's denial of his request for extended law library time in April 2017 violated his First Amendment right to meaningfully access the courts.  To state such a claim, Stow must show that he has been actually injured, with respect to his ability to pursue a nonfrivolous claim that he has a right to litigate.  See Lewis, 518 U.S. at 349-52.  In other words, Stow must show "that an actionable claim has been lost or rejected or that presentation of the claim is currently being prevented" due to Poulin's actions.  Guglielmo v. N.H. State Prison, 111 F.3d 122, 1997 WL 205290, at *1, 1997 U.S. App. LEXIS 8616, at *3 (1st Cir. 1997) (1st Cir. 1997) (unpublished table decision) (citing Lewis, 518 U.S. at 351-57).

Stow does not allege that being denied extended law library time in April 2017 had any injurious impact either on his

ability to litigate any nonfrivolous claim in any action he had pending before any court, or on his ability to file new claims or post-conviction proceedings.  Accordingly, Stow has failed to state a claim for the denial of access to the courts upon which relief might be granted, and the district judge should dismiss Claim 7(a).

> D.   False Statements – Claim 3(a) and 3(b)

Stow asserts that defendants McGrath, Lirette, Perkins, and Poulin violated his First and Fourteenth Amendment rights to due process and equal protection when they made false written and oral statements concerning the reasons for Stow's transfer to NCF and the denial of extended law library time to Stow in April 2017.  There is no constitutional right not to be lied to. Accordingly, Stow cannot state a claim under either the First Amendment or the Fourteenth Amendment upon which relief might be granted based on defendants' false statements, and the district judge should dismiss Claim 3(a) and 3(b), including subparts.

> E.   Pt. 1, Art. 2 of the N.H. Constitution – Claim 1(c)

Part 1, Article 2 of the state constitution does not give rise to a private cause of action where there is an adequate established statutory, common law, or administrative remedy to redress the alleged violation.  See Marquay v. Eno, 139 N.H. 708, 721-22, 662 A.2d 272, 282 (1995); see also Traudt v. Roberts, No. 10-cv-12-JL, 2013 U.S. Dist. LEXIS 97804, at *19,

2013 WL 3712437, at *6 (D.N.H. July 12, 2013).  Stow has

adequate remedies available to him under state law, as well as

the prison's administrative grievance procedures, to redress his

claims of a tortious, retaliatory transfer.  Accordingly, he

cannot state a private right of action for a violation of Part

1, Article 2, and the district judge should dismiss Claim 1(c).

     F.   <u>Criminal Conduct and Investigations – Claims 1(e),</u>
         <u>2(d), 3(d), 4(d), 5(d), 6(a), 6(c), 7(d), and 8(e)</u>

Stow asserts that defendants in this case have engaged in

state and federal criminal acts.  Stow further alleges that his

rights were violated when the defendants' crimes were not

investigated, and no probable cause determination was made.

Generally, no federal cause of action, enforceable through

a private action for damages, arises from a violation of a

criminal statute.  See <u>Brady v. Somersworth Sch. Dist.</u>, No. 16-

cv-069-JD, 2016 U.S. Dist. LEXIS 76572, at *9, 2016 WL 3248247,

at *3 (D.N.H. June 13, 2016).  Further, there is no cause of

action under 42 U.S.C. § 1983 for the failure to prosecute a

crime, as there is no federal constitutional right to have

criminal wrongdoers investigated or brought to justice.  <u>See</u>

<u>Linda R. S. v. Richard D.</u>, 410 U.S. 614, 619 (1973) ("a private

citizen lacks a judicially cognizable interest in the

prosecution or nonprosecution of another"); <u>see also</u> <u>Diamond v.</u>

<u>Charles</u>, 476 U.S. 54, 65 (1986) ("[b]ecause the State alone is

entitled to create a legal code," the State alone has standing

to "defend[] the standards embodied in that code").

Accordingly, Claims 1(e), 2(d), 3(d), 4(d), 5(d), 6(a), 6(c),

7(d), and 8(e), asserting that defendants have violated state or

federal criminal statutes, or failed to investigate any crime in

a manner giving rise to liability under 42 U.S.C. § 1983, fail

to state a claim upon which relief might be granted, and the

district judge should dismiss those claims.

     G.    <u>Failure to Terminate – Claims 8(a), 8(b), 8(c)</u>

Stow asserts that DOC employees are required by state law,

RSA § 92:2, to take an oath of office, under Part 2, Article 84

of the New Hampshire Constitution, vowing to faithfully execute

the duties of their office.  Stow claims that defendants have

violated that oath.  Stow asserts that RSA § 92:2 mandates that

such officers be terminated, and that the failure of supervising

authorities to terminate such employees has violated Stow's

rights.

Assuming, without deciding, that any defendant to this

action has committed an act in violation of his or her oath of

office, nothing in either the New Hampshire Constitution or RSA

§ 92:2 provides Stow with standing or a private right of action

to challenge the failure to terminate the employment of a DOC

employee.  Stow has not pleaded facts to show that he had any

protected liberty or property interest affected by defendants'

actions, or that similarly situated individuals have been

treated differently.  Accordingly, Stow has failed to state any claim upon which relief can be granted in the allegations summarized in Claims 8(a)-(c), and the district judge should dismiss those claims.

    H.    <u>Failure to Follow Prison Policy – Claims 1(f), 2(e), 3(e), 4(a), 4(b), 4(e), 5(e), 6(d), 7(e), 8(f)</u>

Stow asserts that his rights have been violated by defendant prison officials' failure to follow DOC policies.  "An assertion that prison officials failed to follow prison rules or policies does not set forth a constitutional claim."  <u>McFaul v. Valenzuela</u>, 684 F.3d 564, 579 (5th Cir. 2012); <u>see</u> <u>Querido v. Wall</u>, C.A. No. 10-098 ML, 2010 U.S. Dist. LEXIS 139201, at *14, 2010 WL 5558915, at *3 (D.R.I. Dec. 8, 2010), <u>R&R adopted</u>, 2011 U.S. Dist. LEXIS 1882, 2011 WL 63503 (D.R.I. Jan. 7, 2011).

DOC policies governing the conduct of prison officials do not give rise to a private right of action for the violation of those policies.  Accordingly, Stow cannot state a claim for relief on the basis of the defendants' violation of prison policies, and the district judge should dismiss Claims 1(f), 2(e), 3(e), 4(a), 4(b), 4(e), 5(e), 6(d), 7(e), and 8(f).

    I.    <u>State Law Claims</u>

        1.    <u>**Abuse of Process—Claim 1(d)(ii), 2(c)(i), 3(c)(i)**</u>

In New Hampshire, "[a] party claiming abuse of process must prove the following elements: (1) a person used (2) legal process, whether criminal or civil, (3) against the party (4) primarily to accomplish a

purpose for which it is not designed and (5) caused
harm to the party (6) by the abuse of process."

Lath v. Oak Brook Condo. Owners' Ass'n, No. 16-cv-463-LM, 2017
DNH 052, 2017 WL 1051001, at *19–*20, 2017 U.S. Dist. LEXIS
39617, at *50 (D.N.H. Mar. 20, 2017) (quoting Tessier v.
Rockefeller, 162 N.H. 324, 335, 33 A.3d 1118, 1126-27 (2011)).
"In order for a party to commit an abuse of process, some court
authority or jurisdiction must be used." Tessier, 162 N.H. at
335, 33 A.3d at 1127.  Stow has not alleged that any defendant
misused any court process.  Accordingly, Stow has failed to
state an abuse of process claim upon which relief might be
granted, and the district judge should dismiss Claims 1(d)(ii),
2(c)(i), and 3(c)(i).

> **2.   Supplemental Jurisdiction - Claims 2(c)(ii)-
> (iii), 3(c)(ii)-(viii), 4(c)(i)-(v), 6(b)(i)-
> (iv), 7(c)(i)-(iv), 8(d)(i)-(iv)**

Stow asserts claims to relief under state common law.  To
the extent Stow has failed to state a federal claim upon which
relief might be granted in this matter, the district judge
should decline to exercise supplemental jurisdiction over the
asserted state law claims that are related to those federal
claims.  Litigation of such claims in this action would require
resolution of evidentiary issues and issues of state law that
would substantially predominate over the claims remaining in
this action.  Accordingly, the district judge should decline to
exercise supplemental jurisdiction over Claims 2(c)(ii)-(iii),

3(c)(ii)-(viii), 4(c)(i)-(v), 6(b)(i)-(iv), 7(c)(i)-(iv),
8(d)(i)-(iv).  Those claims should be dismissed, pursuant to 28
U.S.C. § 1367, without prejudice to Stow's ability to assert
them in an action filed in state court.

J.   Defendant Christopher Kench

Stow has not asserted sufficient facts against defendant
DOC Security and Training Director Christopher Kench to state a
claim that Kench has violated Stow's rights.  Accordingly, the
district judge should dismiss claims asserted against Kench, and
dismiss him, as a defendant, from this action.

K.   Constitutionality of State Laws – Claims 9(a) & 9(b)

"Article III of the Constitution limits the jurisdiction of
federal courts to 'Cases' and 'Controversies.'"  Susan B.
Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014) (quoting
U.S. Const., Art. III, § 2).  "The doctrine of standing gives
meaning to these constitutional limits by 'identify[ing] those
disputes which are appropriately resolved through the judicial
process.'"  Susan B. Anthony List, 134 S. Ct. at 2341 (citation
omitted).  "To establish Article III standing, a plaintiff must
show (1) an 'injury in fact,' (2) a sufficient 'causal
connection between the injury and the conduct complained of,'
and (3) a 'likel[ihood]' that the injury 'will be redressed by a
favorable decision.'"  Id. (citation omitted).  The burden to
establish standing lies with the party seeking to invoke the

28

jurisdiction of a federal court.  See id. at 2342.

> [A] plaintiff raising only a generally available
> grievance about government – claiming only harm to his
> and every citizen's interest in proper application of
> the Constitution and laws, and seeking relief that no
> more directly and tangibly benefits him than it does
> the public at large – does not state an Article III
> case or controversy.

Lujan v. Defs. of Wildlife, 504 U.S. 555, 573-74 (1992).

Here, Stow makes a general challenge to the
constitutionality of state statutes having to do with the
indemnification, legal representation, and service retirement
benefits of state employees.  Stow asserts that providing state
employees with those benefits violates the Fourteenth Amendment
and the New Hampshire Constitution.

Stripped of legal conclusions, nothing in the complaint
suggests that Stow's rights are affected by these statutes in
any manner that is not shared by the public generally.  Stow
lacks standing to challenge the constitutionality of RSA §§ 99-
D:1, 99-D:2, 99-D:3, 99-D:4, 99-D:7, and 100-A:5, and the
district judge should dismiss Claims 9(a) and 9(b).

L.   PPD 5.11 – Claims 10(a) & 10(b)

Stow alleges that PPD 5.11 is unconstitutionally vague, as
Stow describes the policy as facially "inconclusive" as to
whether the DOC will grant Stow earned time credit for his
Associates Degrees.  PPD 5.11, however, contains a specific
description of degrees that entitle an inmate to earned time

credit.  PPD 5.11 is thus neither vague nor void for vagueness.
Accordingly, the district judge should dismiss Claim 10(a).

Stow also states that PPD 5.11 is unconstitutional as
applied to him, as it excludes him from earned time credit that
other similarly situated inmates would receive, without a
rational basis for the distinction.  Stow asserts that he has
requested earned time credit for his Associates Degrees, but has
not yet received such credit.  Stow concedes, however, that his
request is being considered by the DOC Assistant Commissioner.
Accordingly, Stow cannot claim, at this time, that PPD 5.11 as
applied to him, denies him any earned time credit.  Therefore,
the district judge should dismiss Claim 10(b) as unripe, without
prejudice to Stow's ability to challenge, in a separate action,
a future denial of earned time credit relating to his degrees.

    M.   Laaman Consent Decree

Stow seeks enforcement of a consent decree issued in 1978
and modified in 1990, in Laaman v. Helgemoe, Civ. No. 75-cv-258
(D.N.H. filed Aug. 29, 1975), a class action lawsuit challenging
conditions of confinement at the New Hampshire State Prison.  On
July 6, 2001, the court approved a settlement agreement and
stipulation of dismissal in Laaman.  See id. (D.N.H. July 6,
2001) (ECF No. 523).  The July 6, 2001 Order terminated federal
court jurisdiction over the matter, and provided that the 1990
consent decree, as modified by the settlement agreement, would

constitute a final settlement agreement that would be
enforceable in the state courts of New Hampshire.  Id.  This
court lacks federal question jurisdiction over Stow's claims
based on alleged violations of the Laaman Consent Decree.  Cf.
Dupont v. Dubois, 99 F.3d 1128, 1996 WL 649340, at *1, 1996 U.S.
App. LEXIS 29142, at *3 (1st Cir. 1996) (unpublished table
decision) (order seeking to enforce federal or state court
consent decree is unavailable in action under 42 U.S.C. § 1983).
Accordingly, the district judge should dismiss Stow's claims
asserted under Laaman, without prejudice to plaintiff's ability
to assert such claims in an action filed state court.

    N.    Claims 11 - 13

    Stow's filings in this case amount to more than 900 pages
of handwritten pleadings and attached documents, all of which
have been reviewed by the court.  The amended complaint (Doc.
Nos. 28, 29, 30), with addenda, is more than 450 pages long.
Plaintiff asserted his claims in his amended complaint as 44
separate "allegations," each with multiple subparts.  The claims
identified as Claims 1-10 in this R&R, with subparts, contain
all of the claims asserted in those forty-four "allegations."

    Since filing his amended complaint, Stow has filed
additional documents raising new claims that pertain to his
sentencing, his denial of parole, and his access to sexual
offender programming, which have been identified in this R&R as

31

Claims 11-13, with subparts.  Claims 11-13 do not concern the
same facts, defendants, legal issues, or time frame as the
allegations underlying Claims 1-10.  It is not even apparent
that all of the allegations and requests for relief asserted in
conjunction with Claims 11-13 are properly asserted in a civil
rights action, as opposed to a petition for a writ of habeas
corpus.

        "A party asserting a claim ... may join, as independent or
alternative claims, as many claims as it has against an opposing
party."  Fed. R. Civ. P. 18(a).  A plaintiff may join multiple
defendants in a single action only if the plaintiff asserts at
least one claim to relief against each of them that arises out
of the same transaction or occurrence and presents questions of
law or fact common to all.  7 Charles Alan Wright et al., Fed.
Prac. & Proc. Civ. § 1655 (3d ed. 2001).  "Unrelated claims
against different defendants belong in different suits," in part
"to ensure that prisoners pay the required filing fees," and
that prisoners do not avoid exposure to the "three strikes"
provision of 28 U.S.C. § 1915(g).  George v. Smith, 507 F.3d
605, 607 (7th Cir. 2007).

        Without commenting on their merits, the district judge
should dismiss Claims 11-13 from this case, as they are not
properly joined with the remaining claims in this matter.  The

dismissal of Claims 11-13 should be without prejudice to Stow's ability to file a new action or actions asserting those claims.

### O.    Eleventh Amendment

Stow names state officers in their official capacities and state agencies as defendants.  The Eleventh Amendment precludes claims for damages and injunctive relief against state agencies, and suits for damages naming defendants in their official capacities.  See Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015).  Accordingly, the court should dismiss all of the claims for damages in this action to the extent they are asserted against any individual in his or her official capacity, and all claims for damages and injunctive relief asserted against any state agencies named as defendants.

### P.    Sections 1985 and 1986

Plaintiff cites 42 U.S.C. § 1985 as providing a federal cause of action for his claims.

> Section 1985(1) pertains to preventing federal officers from performing their duties, which is not applicable to the circumstances alleged in the complaint.  Section 1985(2) pertains to conspiracies to interfere with federal court proceedings and conspiracies to interfere with state court proceedings "with intent to deny any citizen the equal protection of the laws."  Section 1985(3) pertains to conspiracies for the purpose of "depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws."  Claims under § 1985(2) pertaining to state court proceedings and under § 1985(3) must allege "that the conspiracy was motivated by some racial or perhaps otherwise class-based, invidiously discriminatory animus."

MacDonald v. Clark, No. CIV. 06-245-JD, 2008 U.S. Dist. LEXIS
113175, at *7-*8, 2008 WL 544857, at *3 (D.N.H. Feb. 26, 2008)
(citations omitted).  Section 1986 provides a cause of action
against an official for neglecting to prevent a conspiracy under
42 U.S.C. § 1985.  See Maymi v. P.R. Ports Auth., 515 F.3d 20,
31 (1st Cir. 2008).  Plaintiff does not allege any viable claim
of class-based discrimination, and for that reason, neither
section 1985 nor section 1986 provides a cause of action for his
claims.  Plaintiff's claims asserted under 42 U.S.C. §§ 1985 and
1986 should be dismissed.

## Motions

## I.    "Motion for Certification for Constitutional Challenge of State Statutes" (Doc. No. 25)

In his motion for certification, Stow asks this court to
certify the question of the constitutionality of RSA §§ 99-D:1,
99-D:2, 99-D:4, 99-D:7, and 100-A:5, the constitutionality of
which Stow has challenged in this action in Claims 9(a) and
9(b), to the New Hampshire Supreme Court.  In this R&R, the
court has recommended that Stow's constitutional challenges to
these statutes be dismissed from this action for lack of
standing.  Because the court finds that Stow does not have
standing to challenge the constitutionality of those statutes in
this court, the court should decline to certify the questions to
the New Hampshire Supreme Court, without prejudice to Stow's

ability to directly challenge those statutes in the state courts.

## II.   "**Motion Presenting Clarification of Any Required Exhaustion of Remedies" (Doc. No. 35)**

Stow has filed a motion seeking to clarify evidence concerning his exhaustion of administrative remedies as to claims he has asserted in this case.  A prisoner plaintiff's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e) is an affirmative defense, and thus exhaustion need not be demonstrated in the complaint.  See Ramos v. Patenaude, 640 F.3d 485, 488 (1st Cir. 2011).  Because the complaint has not yet been served, no affirmative defenses have been asserted in this case, and the issue of exhaustion is not presently before the court.  Accordingly, the district judge should deny the motion to clarify (Doc. No. 35) as premature, until defendants seek relief based on an exhaustion defense.

## III.   "**Motion for Declaratory Judgment Pursuant to 28 USC 2201; Fed R. Civ. P. 57" (Doc. No. 38) and "Motion Request to Submit a Memorandum of Law" (Doc. No. 53)**

Stow has filed two motions essentially seeking relief relating to the allegations underlying Claims 11-13 in this case, which the court recommends be dismissed from this action, without prejudice to being filed in one or more new actions. Accordingly, the district judge should deny Stow's motion for declaratory judgment (Doc. No. 38) and related motion to submit a memorandum of law (Doc. No. 53) in support of declaratory

judgment, without prejudice to Stow's ability to file those motions, or assert the issues raised therein, in a new action or actions related to the facts underlying Claims 11-13.

## IV.   "Motion Regarding Supplemental Jurisdiction" (Doc. No. 42)

Stow has filed a motion asking the court to exercise supplemental jurisdiction over claims asserted under state law. This Report and Recommendation includes the recommendation that the district judge decline to exercise supplemental jurisdiction over Claims 2(c)(ii)-(iii), 3(c)(ii)-(viii), 4(c)(i)-(v), 6(b)(i)-(iv), 7(c)(i)-(iv), 8(d)(i)-(iv).  Accordingly, the motion for supplemental jurisdiction should be denied to that extent.  The motion should be granted, in part, to the extent this Report and Recommendation recommends dismissal of certain state law claims on the merits, and to the extent consistent with the Order issued on this date, which directs defendants to file a response to certain state and federal claims.

## V.   "Motion to Remove Sr. Assistant Atty. Gen. Lynmarie C. Cusack as Named Defendant from Case" (Doc. No. 52)

Stow asserts that he does not seek to name Senior Assistant Attorney General Lynmarie C. Cusack as a defendant in this case. The district judge should grant the motion and dismiss Attorney Cusack, as a defendant, from this case.

## Conclusion

For the foregoing reasons, the district judge should:

36

1.   Dismiss Claims 1(b), 1(c), 1(d)(ii), 1(e), 1(f), 2(b), 2(c)(i), 2(d), 2(e), 3(a), 3(b), 3(c)(i), 3(e), 4(a), 4(b), 4(d), 4(e), 5(b), 5(d), 5(e), 6(a), 6(c), 6(d), 7(a), 7(b), 7(d), 7(e), 8(a), 8(b), 8(c), 8(e), 8(f), 9(a), 9(b), and 10(a), from this case for failure to state a claim;

2.   Dismiss Claims 2(c)(ii)-(iii), 3(c)(ii)-(viii), 4(c)(i)-(v), 6(b)(i)-(iv), 7(c)(i)-(iv), and 8(d)(i)-(iv), 10(b), 11-13, and any claims seeking relief under Laaman, without prejudice, as discussed in this R&R;

3.   Drop all state agencies, and dismiss all individuals named as defendants in either their personal or official capacities, with the exception of defendants McGrath, Lirette, Hardy, and Perkins, as to whom service has been ordered;

4.   Deny the "Motion for Certification for Constitutional Challenge of State Statutes" (Doc. No. 25) without prejudice, as discussed above;

5.   Deny the "Motion Presenting Clarification of Any Required Exhaustion of Remedies" (Doc. No. 35) as premature, and without prejudice, as discussed above;

6.   Deny the "Motion for Declaratory Judgment Pursuant to 28 USC 2201, Fed. R. Civ. P. 57" (Doc. No. 38) and "Motion Request to Submit a Memorandum of Law" (Doc. No. 53), without prejudice, as discussed above;

7.   Grant in part and deny in part the "Motion Regarding Supplemental Jurisdiction Specifics" (Doc. No. 42) as set forth above; and

8.   Grant the "Motion to Remove Sr. Assistant Atty. Gen. Lynmarie C. Cusack as Named Defendant from Case" (Doc. No. 52).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).


_____
Andrea K. Johnstone
United States Magistrate Judge


October 13, 2017

cc:  Weston J. Stow, pro se